**CLOSED**

NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD TIRONE, et al, : | |
| : | Civil Action No. 03-257 (SRC) |
| Plaintiffs, : | |
| : | **OPINION** |
| v. : | |
| : | |
| SHERIFF TRELLA, et al., : | |
| : | |
| Defendants. : | |

**CHESLER**, District Judge

This matter comes before the Court upon the Motion for Summary Judgment filed by Defendants Bergen County Sheriff Trella and Sergeant O'Sullivan ("Defendants") [docket item # 71]. This Court has considered the submissions by the parties in connection with the motion, and pursuant to Federal Rule of Civil Procedure 78, adjudicates the motion based on the papers submitted. For the reasons discussed below, this Court grants Defendants' motion for summary judgment in its entirety.

**I.     BACKGROUND**

Plaintiffs Edward Tirone, James Kennedy, Jeffrey Thomas, Darryl Bozeman, ("Plaintiffs") and Darrel Booker[1] initiated this action under 42 U.S.C. § 1983 alleging violations

---

[1] The Court dismissed Mr. Booker's complaint for failure to prosecute pursuant to Fed. R. Civ. P. 41(b) by Order dated May 17, 2007 [docket item #72]. Therefore, no claims relating to

of their rights to due process and equal protection pursuant to the Fourteenth Amendment. Plaintiff Bozeman also separately alleges violation of his First Amendment right to free exercise of religion. Plaintiffs, pretrial detainees, were incarcerated in the highest security unit of Bergen County Jail ("Jail"), South 4 ("S4"), for differing periods between June 2001 and June 2006. The alleged constitutional violations arise out of Plaintiffs' confinement in that facility prior to policy changes beginning in April 2005 that increased inmates' time outside of their cells.

Specifically, Plaintiffs' Complaint alleges that the Jail's policy of placing inmates who are classified as "high security" in 23-hour lockdown, which has since been changed, violated the Fourteenth Amendment of the United States Constitution's due process and equal protection guarantees. The Complaint named Sheriff Trella, the Bergen County Sheriff, who is alleged to have imposed the 23-hour lockdown on "detainees with high bails" and that Sergeant O'Sullivan, the "Sergeant of Institutional Classification[,]" who determined which inmates were to be placed in 23-hour lockdown.

In addition to Plaintiffs' general complaint regarding the Bergen County Jail's lockdown policy, individual Plaintiffs raised additional grievances. Mr. Tirone claimed that he was not given his prescription eyeglasses when he was placed in S4, causing his eyesight to deteriorate. Mr. Kennedy claimed that he never received monthly reviews in writing or in front of "the panel[,]" he had insufficient access to the law library of on "average 1-2 [hours] a month[,]" he did not receive proper medical care, his mail was stolen or shipped back to the sender, he had no access to hot water or a microwave oven, the food was "usually cold and raw[,]" the hair and nail clipper were shared by 60 men, and the commissary was overpriced. Mr. Bozeman, a Muslim,

---

Mr. Booker will be considered, despite being raised by the parties.

made the additional allegation that he was deprived of the ability to participate in Friday Jumah services, a required Islamic communal prayer. He also asserts that he would often "remain locked in for 30 or more hours" despite the 23-hour lockdown policy, he was denied in-person or panel review of his classification, and Sergeant O'Sullivan did not respond to inquiries about his status.

Defendants filed this motion for summary judgment on May 10, 2007 [docket item #71], asserting that Plaintiffs have not been deprived of rights protected by 42 U.S.C. §1983, the S4 unit's operating procedure does not violate the Fourteenth Amendment's protections of due process or equal protection, Defendants are entitled to qualified immunity, and Mr. Bozeman was not deprived of his First Amendment right to free exercise of religion. Plaintiffs filed timely opposition [docket item #82]. They assert that equal protection and due process rights and associated liberty interests were violated by overly restrictive access to the law library, "dehumanizing and demoralizing" housing conditions, use of an arbitrary classification scheme to place them in S4, and the operating procedure for S4, creating a cause of action under §1983. Plaintiffs also dispute Defendant's arguments relative to qualified immunity and Mr. Bozeman's First Amendment free exercise of religion claim.[2]

---

[2] Although Plaintiffs raised additional arguments in their complaint, this Court deems them waived due to Plaintiffs' failure to discuss those claims in their opposition to Defendants' summary judgment motion. This includes factual claims raised in Plaintiffs' Statement of Facts that are not addressed in their memorandum's legal argument section.

## II. LEGAL ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. Boyle v. County of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at 247-48. Pursuant to Federal Rule of Civil Procedure 56(e), the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("[t]o raise a genuine issue of material fact, . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant[,]" but

4

rather must "exceed[] the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993)).

**B.     Discussion**

Plaintiffs cite  42 U.S.C. § 1983 as jurisdictional grounds.  That statute provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
>
> [42 U.S.C. § 1983.]

To establish a claim under § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color or state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or the laws of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

The constitutional violations at issue in this case allegedly occurred while Plaintiffs were housed at the Bergen County Jail, a state correctional facility, and their claims arise out of alleged conduct by Bergen County Jail officials (Defendants Sheriff Trella and Sergeant O'Sullivan).  Defendants were therefore acting under color of state law, 42 U.S.C. § 1983, so Plaintiffs meet the first §1983 requirement for establishing a cause of action to redress alleged violations of their rights under the Fourteenth Amendment to the Constitution.  The discussion that follows addresses the second requirement: whether Plaintiffs have demonstrated that

Defendants' conduct deprived them of Constitutional rights, privileges, or immunities.

1. S4 Procedures and Conditions Due Process Claims

Plaintiffs allege that the conditions in the Jail's high maximum S4 unit constituted unconstitutional punishment in violation of their Fourteenth Amendment rights to due process and equal protection. Specifically, Plaintiffs claim that the conditions in S4 constituted punishment because they were "dehumanizing." Plaintiffs also assert that "they were arbitrarily placed in S4 upon arrival at the [Jail] without proper justification. They were treated differently than the inmates in general population. They were not afforded one hour a day outside their cell. They were kept in their cells far in excess of 23 consecutive hours. The time out of their cells was cut short at the discretion of jail officials. They were denied regular access to the law library. They were not properly paid their employment wages." Pls. Opp'n to Defs. Mot. for Summ. J. at 28. Defendants assert that the S4 operating and classification procedures were constitutionally permissible.

Conditions of pretrial detainment must not "amount to punishment of the detainee[,]" because the Due Process Clause forbids a detainee from being punished "prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 536 (1979); see also Stevenson v. Carroll, 495 F.3d 62, 67 (3d Cir. 2007) (applying the standards and analysis articulated in Bell). A showing of an express intent to punish by prison officials is in itself determinative that the condition of detainment under review rises to the level of punishment. See Bell, 441 U.S. at 538. Where no express intent to punish is shown, however, the inquiry becomes "whether an alternative purpose to which [the restriction] may rationally be connected is assignable to it, and whether it appears excessive in relation to the alternative purpose assigned

6

[to it]." Id. (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69 (1963)). Therefore, "if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." Stevenson, 495 F.3d at 67-68 (quoting Kennedy, 372 U.S. at 539).

In analyzing "whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," deference must be afforded to prison officials' expertise regarding prison management, "and in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Id. at 68 n.3 (quoting Kennedy, 372 U.S. at 540 n.23). Furthermore, only limited proof is required to show that "the [detainee's] classification was appropriate based on reasonable prison management concerns." Id. at 69. When detainees' claims that the conditions of their detainment constitute punishment "are coextensive with the allegations that form the basis for the procedural due process claim, it will generally be sufficient for the prison officials to submit affidavits to show that the classification was appropriate based on reasonable prison management concerns." Id. at 69. Under most circumstances, substantive due process inquiries are also precluded by "a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless[.]" Id.

Furthermore, the Third Circuit recently reiterated that a court's evaluation of pretrial detainees' claims of unconstitutional punishment must "consider the totality of circumstances

7

within an institution." Stevenson, 495 F.3d at 68 (quoting Hubbard v. Taylor, 399 F.3d 150, 160 (3d Cir.2005)).  This inquiry differs from the analysis required for convicted prisoners' challenges to detainment conditions, which focuses on "state-created liberty interests regarding 'freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  Id. at 69 n.4 (quoting Sandin v. Connor, 515 U.S. 472, 484 (1995) and stating that "Sandin does not apply to [pretrial detainees]").

Plaintiffs' assertion that their placement in S4 was arbitrary and improperly justified is without merit, as Defendants demonstrate, without effective rebuttal by Plaintiffs, that the S4 classification was the result of application of "objective criteria reasonably related to legitimate institutional objectives."  The burden of demonstrating the absence of a genuine issue of fact initially falls on the moving party.  See Celotex, 477 U.S. at 322-23.  Here, Defendants presented the means by which the Jail classifies inmates in the form of the "Initial Custody Assessment Scale," which explains the point system that is used to score an inmate's current situation and prior history and how many points classify an inmate at a minimum, medium, or maximum security level.  Dfs.' Mot. for Summ. J., O'Sullivan Certif. [hereinafter "O'Sullivan Certif."], Ex. 2.  Defendants also presented to the Court the individual classification test results for each Plaintiff that placed each in the "highest security" range, and the results reflect adherence to the "Initial Custody Assessment Scale."  O'Sullivan Certif., Ex. 3 (Bozeman); Ex. 7 (Thomas); Ex. 10 (Kennedy); Ex. 13 (Tirone).  Furthermore, although not challenged by Plaintiffs, Defendants also submitted copies of the written notice given to each Plaintiff noting his classification and the

reasons for it.  O'Sullivan Certif., Ex. 5 (Bozeman); Ex. 8 (Thomas); Ex. 11 (Kennedy); Ex. 14 (Tirone).  In contrast, Plaintiffs offer no evidence beyond their own assertions in their depositions to support their statement that the classification system in itself was arbitrary or that improper justification for the placement existed.

Plaintiffs also allege that they were treated differently than inmates in the general population and that treatment constituted unconstitutional punishment.  Specifically, Plaintiffs state that they were subjected to "dehumanizing and demoralizing conditions," citing a lack of access to exercise opportunities, telephones, reading material, religious practice opportunity, private bathroom toilets, and hot water for soup or coffee.  Additionally, Plaintiff Kennedy cites a lack of sufficient light at points during the day, and Plaintiff Bozeman cites shared cells as a violation.  Plaintiffs also state that these conditions were exacerbated by the 23-hour lockdown policy in S4 from August 2000 until March 2004.  Although the conditions described by Plaintiffs differ from conditions experienced by the general prison population, Plaintiffs have failed to show the existence of a genuine issue of material fact.  See Celotex, 477 U.S. at 324.

Defendants must show that the restrictions cited above are reasonably related to a legitimate governmental purpose.  Stevenson, 495 F.3d at 67-68.  According to the Third Circuit, an affidavit is sufficient to make this showing.  Id. at 69.  Defendants met their obligation to show that the above restrictions were reasonably related to a legitimate governmental purpose by providing the certification of Captain Richard Kappler to describe the conditions in S4 and the reasons for them.  See Stevenson, 495 F.3d at 67-68, 69.  Captain Kappler explained that mobility in S4 was reduced, because  "in August of 2000[,] . . . inmates housed in the unit became violent, attacking and injuring officers."  He certified that, after the violence in August

9

2000, prison administration determined that separating highest security inmates "was imperative for the overall security and orderly operation of the facility[.]" Furthermore, he explained the 23-hour lockdown policy, stating that inmates were "let out of the cells for one hour per day in groups of no more than eight for recreational, telephone and showering[,]" although they "have the ability to access the law library at a different time other than the hour out of the cell per day." Captain Kappler's certification demonstrates that the restrictions placed on the inmates in S4 were reasonably related to the legitimate governmental purpose of maintaining prison security and officer safety. Since the conditions and regulations were a response to an out-of-control situation that occurred in their absence, they were not "arbitrary or purposeless." See Stevenson, 495 F.3d at 67-68. Further, since no evidence has been produced indicating that the 23-hour lockdown was an exaggerated response to the August 2000 incident described by Captain Kappler, the Court defers to the expert judgment of prison officials regarding prison operations and security. See id. at 68 n.3.

Captain Kappler's certification also demonstrates a reasonable relationship between S4's 23-hour lockdown and prison security in relation to the other conditions complained of as unconstitutional punishment by Defendants, including shared cells that lacked private bathroom facilities and a lack of access to hot water for soup or coffee during the 23-hour lockdown. Furthermore, these deprivations, along with Mr. Kennedy's assertion of unspecified periods when the lights were not on in the morning, do not rise to the level of punishment addressed in Bell v. Wolfish, 441 U.S. 520. See also Garcia v. Bergen County Jail, No. 02-2807, slip op. at 21-25 (D.N.J. Sept. 16, 2004).

Plaintiffs further contend "that their access to the law library was significantly restricted,

10

**CLOSED**

to the point that a Court Order was necessary." Pls. Opp'n to Defs. Mot. for Summ. J. at 20. They explain that "access to the law library once every three weeks, if fortunate, constitutes a significant undue burden, which far exceeds that which is normally associated with ordinary prison life." Id. at 21. However, Plaintiffs again fail to assert any specific facts showing that a triable issue exists. See Big Apple BMW, Inc., 974 F.2d at 1363. Inmates do not have a right to access a law library; they have a constitutional right to access the courts. Lewis v. Casey, 518 U.S. 343, 350 (1996) (discussing Bounds v. Smith, 430 U.S. 817 (1977)). Therefore, an inmate cannot succeed on a claim that asserts no more than that he or she was deprived of sufficient access to a law library; the "inmate . . . must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Id. at 351. In this situation, Plaintiffs do not assert that they were harmed in any way by limited access to the Jail's law library. Furthermore, their complaint lacks even the slightest suggestion that they were not represented by counsel in the underlying prosecutions. A complaint that access was limited without an assertion of resulting harm does not rise to the level of a constitutional violation under Lewis v. Casey. See id. at 350-55.

Finally, Plaintiffs assert that they were "not properly paid their employment wages." Pls. Opp'n to Defs. Mot. for Summ. J. at 28. Mr. Tirone claims that he filed a single "grievance with the [Jail] concerning his missing wages, but he never received a response." Id. at 6. However, in his deposition, Mr. Tirone stated that his grievance was addressed by Lieutenant Bakay, who told him that if the officer did not sign a payroll sheet, the prisoners would not get paid. Tirone Dep. at 43-44. Mr. Thomas also asserted that he filed a grievance due to not being properly paid but

**CLOSED**

makes no assertion that the grievance was not responded to, nor does he state whether he was granted relief.  Pls. Opp'n to Defs. Mot. for Summ. J. at 15; Thomas Dep. at 51.  No elaboration beyond the above general statements is given.  Neither Mr. Tirone nor Mr. Thomas state whether an internal appeals process was available to them and if they pursued internal appeals of their grievances.  The Prison Litigation Reform Act of 1995 states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); see Jones v. Bock, 127 S. Ct. 910 (2007) (discussing the genesis and contours of the Prison Litigation Reform Act).  Additionally, in their complaint, Plaintiffs did not allege that they were not properly paid employment wages; they raised that claim for the first time in their opposition to summary judgment.  Adding claims to a pleading is properly done by amending the complaint; it is too late to introduce an additional claim at the summary judgment stage.  See, e.g., Carr v. Gillis Associated Indus., Inc., 227 F.App'x. 172, 176 (3d Cir. 2007) (citing as examples "Speziale v. Bethlehem Area Sch. Dist., 266 F.Supp.2d 366, 371 n. 3 (E.D.Pa.2003) ("Plaintiff's counsel cannot reasonably expect to amend the complaint after the close of discovery merely by raising new arguments in the responsive papers" to a motion for summary judgment.); OTA P'ship v. Forcenergy, Inc., 237 F.Supp.2d 558, 561 n. 3 (E.D.Pa.2002) (holding that a new claim that was first raised in opposition to a motion for summary judgment was "too late")").  It also must be noted that Defendants failed to address any of Plaintiffs' payment contentions in their initial brief or in their reply in support of the motion for summary judgment.  However, Plaintiffs also fail to

**CLOSED**

make a legal argument on this issue; all substantive allegations are made in their statement of facts.

In analyzing whether the conditions a pre-trial detainee was subjected to constitute punishment, the Court must look at "the totality of circumstances within an institution." Stevenson, 495 F.3d at 68. Here, Defendants presented the Court with evidence that the conditions in S4 were rationally related to a legitimate interest in the Jail's security and management. See Stevenson, 495 F.3d at 67-68. Plaintiffs' proofs and arguments are insufficient to demonstrate the possibility of a triable issue of fact existing regarding a deprivation of substantive or procedural due process, given the deference that courts afford to corrections officials in the operations of a prison. See id. at 68 n.3; Celotex, 477 U.S. at 324; Big Apple BMW, Inc., 974 F.2d at 1363. Plaintiffs therefore fail to show that they have the ability to satisfy the second prong of 42 U.S.C. § 1983 analysis: that the conduct being objected to deprived them of rights, privileges, or immunities secured by the Constitution or the laws of the United States. See Parratt, 451 U.S. at 535. Regarding challenges to S4's standard operating procedure and general conditions in the unit, despite the Court's construing all facts and inferences in the light most favorable to the nonmoving party, Boyle, 139 F.3d at 393, Plaintiffs have failed to show affirmative evidence sufficient to demonstrate unconstitutional conditions in S4 in light of the analysis required by Bell and Stevenson and the evidence presented by Defendants. Big Apple BMW, Inc., 974 F.2d at 1363. As such, Defendants have "show[n] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson, 477 U.S. at 248; Kreschollek,

**CLOSED**

223 F.3d at 204.

Accordingly, the Court will grant summary judgment in Defendants' favor on the Due Process claims asserting that the conditions and procedures in S4 constituted unconstitutional punishment of Plaintiff detainees.

        2.       Mr. Bozeman's First Amendment Free Exercise Claim

Mr. Bozeman, a practicing Muslim, raises an additional claim alleging violation of the Free Exercise Clause of the First Amendment, because "he was unable to participate in weekly Jumah congregational prayer" for the time prior to the Jail's accommodating grievances that he filed requesting to participate. Pls. Opp'n to Defs. Mot. for Summ. J. at 34. Mr. Bozeman testified in his deposition that he filed grievances to Jail administrators requesting that he and others be allowed to participate in Jumah, and those requests were initially denied due to Mr. Bozeman's "highest security" classification but were eventually granted. Bozeman Dep. 34-37.

Individuals' First Amendment right to free exercise of religion can be limited while they are in prison: "prisoners' exercise of First Amendment freedoms may be curtailed when, in the informed judgment of prison officials, such exercise poses "the likelihood of disruption to prison order or stability, or otherwise interferes with the legitimate penological objectives of the prison environment." Wilson v. Schillinger, 761 F.2d 921, 925 (3d Cir. 1985) (quoting Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 132 (1977)). This standard is in accord with the method in Bell and Stevenson for analyzing whether confinement conditions constitute unconstitutional punishment of detainees. See Stevenson, 495 F.3d at 67-68, 68 n.3.

In his deposition, Mr. Bozeman stated that his requests to participate in Jumah were

**CLOSED**

initially denied by two prison officials, and the officials explained that "due to [Mr. Bozeman's] highest security, [prisoners in S4] weren't allowed to have prayer outside of [their] cells in group form." Bozeman Dep. at 36. This reasoning for the initial denial of Mr. Bozeman's request to participate in Jumah is therefore in accord with the Jail's determination of the necessity of 23-hour lockdown for "high security" prisoners, based on "the likelihood of disruption to prison order or stability[.]" See Wilson, 761 F.2d at 925; Certif. of Captain Richard Kappler at 1-2. In light of the deference given to the management expertise of prison administrators in the absence of any evidence showing that "officials have exaggerated their response" in their attempts to "maintain[] security and order and operat[e] the institution in a manageable fashion[,]" restricting an S4 inmate from participating in group prayer was not "arbitrary or purposeless" and was "reasonably related" to the Government's management and security interests. See Stevenson, 495 F.3d at 67-68.

Accordingly, summary judgment for Defendants is warranted.

### IV. CONCLUSION

For the foregoing reasons, this Court grants Defendants' motion for summary judgment, dismissing with prejudice Plaintiffs' Complaint in its entirety. An appropriate form of order will be filed together with this Opinion.

                                                 s/ Stanley R. Chesler
                                                 STANLEY R. CHESLER
                                                 United States District Judge

DATED: October 29, 2007